## RICHARDSON v. HINCK et al.

(Supreme Court, Appellate Division, Second Department.   March 6, 1900.)

PARTNERSHIP—NOTES—EVIDENCE.

> The partnership of R., H., and O., to which R. had contributed $100,000, was dissolved by retirement of R.; he not at the time being paid any part of his contribution, and retaining none of the firm property.   At the same time a new partnership was formed by H., O., and E.; the articles providing that E. should contribute $100,000, and that H. and O. should each contribute "all his share and interest in the assets" of the old business, "which they believe will be together of about the value of $100,000." All the assets of the old firm were transferred to the new, but there was no express assumption of liability in the articles for the amount R. was entitled to withdraw from the old firm, nor, so far as appears, any formal agreement between the new partners to pay R. such sum.   Immediately thereafter, however, H., who had charge of the finances, executed the notes of the new firm to R. for $100,000.   *Held*, in an action on the notes, that evidence that from the assets of the old firm, turned over to the new, $198,000 was realized, was admissible to show that the notes were given in the firm business for a value which the firm had received, making the firm liable thereon.

Appeal from trial term, New York county.

Action by Christopher Richardson against Henry J. Hinck and others.   From a judgment on a verdict for defendant Erckens, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Frank S. Black (Abraham Gruber and T. B. Chancellor, on the brief), for appellant.

Charles E. Hughes (Arthur C. Rounds, on the brief), for respondent.

HATCH, J.   The undisputed facts are that prior to 1892 the defendants Henry J. Hinck and Thomas Ould had for many years conducted a dry-goods commission business in the city of New York, as co-partners, and that in such business the plaintiff, Christopher Richardson, was a special partner, having contributed thereto the sum of $100,000 as capital.   This firm was dissolved by the retirement of the plaintiff therefrom on the 30th day of December, 1893. Upon the last-named date the defendants entered into a co-partnership agreement, under which the business was continued.   By the terms of the articles of co-partnership the defendant Erckens was to contribute in cash $100,000, and the other two defendants were each to contribute "to said common stock all his share and interest in the assets of the said business now or lately conducted by said Hinck, Ould, and Richardson, as above mentioned, as the same shall be on the thirtieth day of December, 1893 (which they believe will be together of about the value of one hundred thousand dollars), as the same shall then appear by the books of said firm."   The defendant Erckens paid in cash his contribution, all the assets of the old firm were transferred to the new, and the business was conducted, without a break, in manner similar to that theretofore pursued.   Use was made of the books of the old firm to register the

transactions of the new, and the same bookkeeper was continued. Hinck had charge of the financial part of the business, Ould looked after the mills, and Erckens sold goods. The articles of co-partnership prohibited a loan of the funds or credits of the partnership, except for the purchase or consignment of merchandise in the ordinary course of business. When the old firm was dissolved the plaintiff was not paid his contribution of capital, nor did he retain any of the property of the firm. There was no assumption of any liability expressed in the articles of co-partnership, in terms, for the amount of the capital which the plaintiff was entitled to withdraw from the old firm, and, so far as appears, there was no formal agreement between the new partners to pay the plaintiff such sum. Upon the 2d day of January, 1894, Hinck signed and delivered to the plaintiff ten notes of the new firm, for $10,000 each, in payment of the plaintiff's interest in the old firm. Within a day or two thereafter, three of these notes were discounted and paid, and after the dissolution of the new firm $50,000 more was paid by Hinck, acting as liquidator of the firm business. The notes which were originally given were either paid or renewed as they fell due, and at some period two were consolidated. After applying all payments there remained due $20,000, represented by one note, and, that not being paid, this suit was instituted to enforce its collection. Prima facie, the production of the note, with proof of its execution by the party charged with its payment, and of its dishonor, established a cause of action in favor of the holder. As the note was in fact executed by the firm, the cause of action could only be overthrown by proof showing lack of consideration, or that the note was not given in the course of the business of the partnership. Upon prima facie proof of this fact, however, the burden is devolved upon the party seeking to enforce the note to establish that he is either a bona fide holder for value before maturity, or that the note was in fact authorized by the party sought to be charged. Smith v. Weston, 159 N. Y. 194, 54 N. E. 38.

Passing for the present the question of whether it was proper to assume, under the circumstances of this case, that the plaintiff took the notes with knowledge that they were not given in the business of the co-partnership or for its benefit, we come to the fact that it was the claim of the plaintiff that the notes were not only given for the benefit of the partnership, and for value received, but that they were in fact authorized by the persons sought to be charged. Upon the latter question the defendant Erckens would not testify that he did not know that the ten notes were given at about the time they were given, and, when he was first interrogated with reference to conversations with Hinck respecting them, he recollected such conversation, but not what it was, nor the time it was had. He subsequently denied Hinck's testimony as to the conversations had upon this subject, but did not deny that he knew of the existence of the notes prior to the dissolution. If the testimony offered by the plaintiff was believed, it showed that the notes were authorized. A vigorous attack was made by the defendant Erckens upon the plaintiff's testimony, and especially upon that given by the witness

Hinck. It was all the more important, therefore, that no proof should be excluded which legitimately bore upon the issue, or which in any wise tended to the corroboration of the plaintiff's theory or witness. It appeared without dispute that all of the proceeds of the property of the old firm, and all of its accounts which were collected, were paid into the new firm, went into its bank account, and it had the benefit thereof. The articles provided that the amount of Hinck's and Ould's contribution should be of their interests in the old firm. This it was expected would reach about the sum of $100,000. The articles made no provision for the transfer of plaintiff's interest in such firm, or for the payment of his interest. The whole, however, was absorbed by the new firm, and it had the benefit thereof. It is fair to assume, however, that it could not be within the reasonable expectation of any of the members of the new firm that it could appropriate to itself the interest of the special partner without making some compensation therefor, and especially would this be so if the property thus absorbed was of a considerable amount beyond what Hinck and Ould were to contribute. As bearing upon this question, the plaintiff sought to show what was the value of the assets of the old firm which were absorbed by the new. Upon this subject, Mr. Hinck being examined, the following took place:

"Q. Can you tell us how much was realized out of the assets of the firm of Hinck & Ould, which expired or went out of business December 31, 1893, over and above all the liabilities of that firm? Mr. Hughes: I object to that as incompetent and irrelevant. Mr. Gruber: My purpose is to prove the consideration for the note. Mr. Hughes: If you mean to say there is property there which is amenable to these notes, that is applicable to these notes — Mr. Gruber: I mean that there was realized out of the assets of the old firm enough money to pay Richardson his $100,000, and give Hinck & Ould $98,000 capital besides. The Court: This is not an action for an accounting between the members of the firm. Mr. Gruber: I understand that. The Court: Objection sustained. (Exception.)"

It is clearly evident that this testimony was competent, and that the ruling which excluded it cannot be sustained. The question was not one of an accounting of firm property. It scarcely had relation to such matter. The evidence sought to be elicited bore upon three questions which were vital to the case: First. It tended to show a consideration for the notes. If in fact this new firm had $100,000, either in money or in property, which belonged to the plaintiff, and made use of it, then the notes given therefor were founded upon a good consideration, which charged each member of the firm with liability, whether the partners assented to the execution of the notes or had notice of them, or whether the partnership articles provided therefor or not. Second. It tended with much force to show that Erckens had knowledge of the necessity for and the existence of the notes, as it must be presumed that he would expect to pay for what the firm had, in some manner. . Third. It tended directly and forcibly to corroborate Hinck's testimony and the plaintiff's theory of the case. This ruling was somewhat aggravated by the course of the cross-examination of Hinck, wherein was permitted, over the plaintiff's objection, an examination as to how much money he had withdrawn from the firm. If it was com-

petent to show what Hinck drew out from the firm, it was certainly competent to show what was put in. We must assume upon this appeal that, had the plaintiff been permitted, he would have shown that the amount of plaintiff's assets which went into the firm was equal in value to the notes which he received, and that the amount contributed by Hinck and Ould was the sum of $98,000, which sum answered the requirement of the articles of co-partnership, as their contribution. There was other evidence showing that all the property of the old firm went into the new. Its specific value was not given, aside from the offer which was made to prove the value. Had the proof been received and not controverted, it would have established that the notes were in fact given for a debt which the new firm was bound to pay, as it had consideration therefor. This would have answered the requirement of any rule of law in establishing plaintiff's right to recover; for he would then not only have established his prima facie right by the possession and presentation of the note, but he would have shown that it was given in the firm business, for a value which the firm had received.

This condition bears upon another question. The court charged the jury, in substance, that plaintiff must be assumed to have taken the notes with the knowledge that they were not given in the business of the co-partnership. If, however, they were given for the plaintiff's property,—and we must now assume that they were,—this charge was error. Under such circumstances the plaintiff was not only not chargeable with knowledge of the fact that the notes were not given in connection with the firm business, but he would have the right to rely upon the fact that they were so given, and represented value to the firm for their entire amount.

We are also impressed with the fact that the jury by no means obtained a clear view of the issues which they were required to determine. This consideration, if there were no other errors, might compel us to grant a new trial. The defendant, if able to meet the case which the plaintiff is entitled to make, will at least know the evidence and the issue which he will be required to meet upon the new trial. For these reasons, the judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.